IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO.: 15-CR-10046-LTS |
| ) | |
| MARTIN LUSGARTEN, ) | |
| SALOMON BENDAYAN, and ) | |
| ANDRES URICOECHEA ) | |
| Defendants ) | |

PLEASE take notice that upon the date to be determined by the court, Howard B. Brownstein Esquire, Attorney for the Defendant Salomon Bendayan ("Defendant") shall move before the Honorable Leo T. Sorokin, U.S.D.C.J. District of Massachusetts, for an order to suppress Title III wiretap recordings and transcriptions pursuant to Rule12(b)(3)(C) of the Federal Rules of Criminal Procedure.

In support of the above motion, the Defendant relies upon the attached memorandum of law incorporated herein by reference and made a part hereof

BROWNSTEIN & ASSOCIATES, P.C.

By: /s/Howard B. Brownstein, Esquire
    HOWARD B. BROWNSTEIN, ESQUIRE
    Brownstein & Associates, P.C.
    512 42nd Street
    Union City, NJ 07087
    T. (201) 866-4949
    Email: hbb@bba-law.com

DATED: September 9, 2015

## **PRELIMINARY STATEMENT**

In general, the legal framework under which Title III is implemented requires that the issuing judge must first find before approving an application for a warrant that a wiretap application within its four corners clearly demonstrates: (a) that there is "probable cause for belief that an individual is committing, has committed, or is about to commit" a criminal offense; (b) that "there is probable cause for belief that particular communications concerning that offense will be obtained through such interception"; and (c) that "normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried, or to be too dangerous."
See 18 U.S.C. § 2518(3)(a)-(c).

On a motion to suppress, the Court must evaluate, *inter alia*, whether "the facts set forth in the application were minimally adequate to support the determination" that a wiretap was necessary. <u>United States v. Nelson-Rodriguez</u>, 319 F.3d 12, 32 (1st Cir. 2003) (quoting <u>United States v. Scibelli</u>, 549 F.2d 222, 226 (1st Cir. 1977)). Therefore, any unauthorized interceptions of wiretap communications, regardless of the means or the manner, are to be deemed unlawful as a matter of law. 18 U.S.C. §2518, *et. seq.*

The court initially authorized, by its Order pursuant to 18 U.S.C. §2518, to intercept wire communications for 30 days commencing on February 28, 2014, on the Defendant Salomon Bendayan's cellular telephone (917) 714-8866, including voicemail messages related thereto. Subsequently, there were additional Title III authorizations approved by the court for the interception of wire electronic communications on April 4,

2014, May 9, 2014, June, 2014, and on finally on July 21, 2014. All of the applications for these orders were supported exclusively by the affidavits of the HSI SA Michael Krol.

In addition to the above stated Title III Orders, there were two ongoing foreign wiretap investigations undertaken in Argentina and Colombia. Both of these foreign wiretaps apparently involved the same target subjects, specifically the co-defendants Salomon Bendayan and Andres Uricoechea. The Argentina wiretap investigation commenced on August 29, 2013, for period of 60 days. It was continued on October 24, 2013, for a 30 day period. Again continued on November 28, 2013, for an additional 30 day extension. On January 29, 2014, it was continued again for the final remaining 30 day period. The Colombian wiretap investigation commenced November 13, 2013, being for unknown period, but continued again on February 18, 2014, for period of 90 days.

However, at all times relevant hereto, the government knew and understood that in order to reasonably and responsibly preserve the privacy rights of the conversant, minimization was indeed required. The analysis of the subject recorded Attorney-Client calls makes it quite apparent that there existed the complete and total absence by the government to comply with the required minimization.

The complete and total disregard of minimization by the government of the recorded calls between Salomon Bendayan and his attorneys was continuous, and all of such actions being in violation of the order of the Honorable Denise Jefferson Casper USDCJ of the District of Massachusetts. The subject order of the court specifically and unambiguously stated, "**It is further ordered interceptions involving Attorney-Client communications be minimized.**"

Consequently, the numerous substantive violations on the part of the Government of these specifically circumscribed authorizations granted by the court in allowing the wiretaps in this case warrants and support the suppression of all of wiretap evidence obtained thereunder.

## POINT I

### SINCE THE GOVERNMENT'S TRADITIONAL METHODS OF INVESTIGATION WERE MORE THAN SUFFICIENT, THE WIRETAPS OF SALAMON BENDAYAN S TELEPHONS WERE UNLAWFUL AS A MATTER OF LAW, AND ACCORDINGLY ALL OF THE EVIDENCE AND FRUITS THEREFROM MUST BE SUPPRESSED.

In order to validly support an application for wiretap authorization, the Government must show that traditional investigative procedures have proven insufficient, and that more intrusive, non-traditional techniques are essential. _United States v. Ippolito,_ 774 F.2d 1482, 1485 (9th Cir. 1993); _United States v. Guerra-Marez,_ 928 F.2d 665,669 (5th Cir. 1991).

Some examples of these traditional investigative techniques include:

> standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants." Senate Comm. On the Judiciary, Report on the _Omnibus Crime Control and Safe Streets Act of 1667_, S. Rep. No. 1097 at 101 (1968).

Where an application of wiretap surveillance does not meet the "necessity" requirement, the warrant for wiretap surveillance is not valid. See e.g., _United States v. Lilla,_ 669 F.2d 99, 104 (2nd Cir. 1983) (citing _State v. Brenes,_ 385 N.Y.S. 2d 530. 531-

4

532 (1976) (stating that the initial wiretap authorization was invalid because traditional investigatory measures, such as arranging buys, were available, and that the "use of the wiretap was merely a useful additional tool"); See also <u>Berger v. State</u>, 388 U.S. 41, 63 (1967). Accordingly, any and all electronic communications that are intercepted pursuant to an invalid warrant, or any improper execution of the warrant regardless of the means or manner, as well as any fruits therefrom, must be suppressed. *Id.*

In the instant case, the initial and subsequent affidavits in support of the application for wiretap authorizations reveal that traditional investigate techniques were sufficient, available and successful. See, Kroll Affidavit in support of the initial Wiretap dated 2/28/2014. In the initial, and in the subsequent affidavits in support of Title III applications, the Government discuss the use of numerous wiretaps on several different telephones.

The Government is hard-pressed to claim that it was unable to sufficiently infiltrate the group of people that it was targeting as co-conspirators. In fact, one of the named co-defendants named herein was at all times relevant hereto acting in his formal capacity as a confidential source for the government. In its entirety, the initial Krol affidavit in support of initial wiretap authorization on February 28, 2014, clearly demonstrates the lack of necessity since normal investigative techniques were then available and proven to be successful.

For several of the more obvious examples, the court is respectfully requested to note the following:

    1.    Throughout the affidavit the affiant erroneously deems all Bendayan transaction as Drug based trade money laundering, when in fact were CADAVI (government) financial transaction and operations.

5

2. August 29, 2013, through March 2014, the authorities in Argentina had a court ordered wiretap that intercepted Bendayan's telephone calls. (See Attachment A. Annexed to Krol Affidavit.)

3. November 13, 2014, to May 18, 2014, the Colombian authorities had a court ordered authorization to intercept Andres Uricoechea's telephones; (310) 212-3164 and (315) 240-7410. Salomon Bendayan's calls were also intercepted. The District of Massachusetts' initial interceptions were for the same time period. Attachment A. Confirms same.

4. Unfortunately, it is impossible to fully analyze the initial Krol affidavit since a good portion of it has been provided in a redacted format.

5. The Safwan Madarati should be deleted, and does not pertain to Salomon Bendayan. Almost all of that is redacted. *Id.* at paragraph14.

6. The Fire and Ice investigation has no relevance to Salomon Bendayan. *Id.* at paragraph 59 and 66.

7. The Gubereks (Henry and Isaac) were both cooperating with the government agents, and so there absolutely was no need for this wiretap. *Id.* at paragraph 69.

8. All calls between Bendayan and an Argentinean Diego Laoui were intercepted, therefore there was no need for this wiretap. Again most of the information was blackened. *Id.* at paragraph 72.

9. The Argentinean wiretap intercepted all of Bendayan's telephone calls, which were all very specific and detailed lawful business ventures that were not drug based trade money laundering. *Id.* at paragraph 81-104

10. CD-1 is Henry Guberek who was and still is cooperating with law enforcement. The normal techniques were available and successful. *Id.* at paragraph 105-119.

11. CD-2 is cooperating with law enforcement, so that normal investigative technique of recruiting and using informants and confidential sources was admittedly available and successful. *Id.* at paragraph 121-125.

12. CD-3 is cooperating with law enforcement. Therefore, normal investigative techniques were available and successful. Again much of the information is redacted. We have never received TFO Cepro's notes that include information about Bendayan. *Id.* at paragraph 126.

13. SO1-2 is the co-defendant Martin Lusgarten, who at all times relevant to this indictment was formally cooperating as a confidential source, and further demonstrating that normal investigative techniques were available and proven to be successful. The government had access to all his Financial Records and Transactions that he voluntarily provided upon request to them by Lustgarten throughout this relevant time period.

6

14. The normal investigative techniques were so successful, there was no need for further interceptions. In fact, the SDFLA agents subpoenaed and interviewed Salomon Bendayan's accountant, and received all the same information them claimed to be necessary for wiretap. The Accountant provided all of Bendayan's Financial Information.

In order to satisfy the "necessity" requirement the government must demonstrate that it has "a reasonable, good faith effort to run the gamut of normal investigative procedures **before** resorting to means so intrusive as electronic interception of telephone calls. "*United States v. Hoffman*, 832 F2d. 1299, 1306 (1st Cir. 1987). The government's affidavit must demonstrate why ordinary means of investigation will fail; conclusory statements without factual support are not sufficient. See *United States v. Castillo-Garcia*, 117 F3d 1179, 1194 (10 Cir. 1997).

However, in the Title III application affiant, SA Krol provides only the standard boiler-plate rationale and conclusory statements and rationale as to why in this case alternative investigative techniques had been tried and failed. He provided the patent techniques such as: (1) physical surveillance; (2) Grand Jury subpoenas; (3) undercover infiltration; (4) question witnesses; and (5) use of pen register and traps. The DEA Agents affidavit, as discussed in *United State v. Lopez*, 300 F3d 46 (1st Cir 2002) at paragraph 54, states the same reasons as in this case for the necessity for that wiretap. However, the major distinguishing factor in this case is that the government already learned and knew of all the "PLAYERS," even before and without the necessity of obtaining any wiretap.

**THE GOVERNMENT CANNOT POSSIBLY EXPLAIN TO THIS COURT HOW THE GOVERNMENT AGENTS IN THE SDFLA, BEING ENGAGED IN A PARALELL INVESTIGATION OF THESE SAME INDIVIDUALS, FOR THESE**

SAME TRANSACTIONS, WERE ABLE TO INDICT SALOMON BENDAYAN BASED ON THIS SAME EVIDENCE, BUT WITHOUT THE NECESSITY OF HAVING OBTAINED A SINGLE WIRETAP?

The courts continually sanction the use of wiretaps for what should be the last resort before the government is permitted to trample on people's privacy and constitutional rights. "Wiretapping is not [to be] resorted to in situations where [as here] traditional investigative techniques would suffice …." United States v. Kahn, 415 U.S. 143, 153 (1974). Not only do the above statements, but the Title III application affidavits themselves in general, actually support the Defendant's assertion that the complete array of traditional investigate techniques were readily available and demonstrably sufficient. See United States v. Vento, 533 F .2d 838, 848 (3rd Cir. 1976) (stating that "Congress has established this additional precondition to obtaining a section 2518 order to make doubly sure that the statutory authority be used with restraint, and only where the circumstances warrant the … interception of wire communications". United States v. Giordano, 416 U.S. 505, 515 (1974). Highly intrusive wiretap interceptions were not a necessity, and all wiretap evidence and all fruits therefrom must be suppressed.

## CONCLUSION

This court should not sanction the lack of necessity. Normal techniques worked absolutely fine in SDFLA.[1] They obtained the same indictment on the Defendant, and based upon the same facts, the same witnesses, and the same evidence.[2] Accordingly, it is

---

[1] Andres Uricoechea was interviewed twice by the DEA agents and the SDFLA, and was at all times completely cooperative.

[2] SA Krol Affidavit of August 2, 2014, at page 64 - "members of the Miami USAO have reviewed portions of previous wiretap Affidavit that I submitted to the court and have identified certain areas which they believe incorrect."

8

respectfully requested that this wiretap evidence be suppressed by the court.

**POINT II**

**THE CONSISTENT FAILURE TO MINIMIZE ATTORNEY-CLIENT COVERSATIONS IS IN DIRECT CONTRADICTION OF BOTH THE LETTER AND SPIRIT OF THE LAW, AND REQUIRES THE SUPPRESSION OF ALL OF THE WIRETAP EVIDENCE**

Any time the Government is authorized to intercept wire communications, it must also adhere to the standards of minimization required by federal law. See 18 U.S.C. §2518(5). Therefore, there must also be full compliance with the applicable provisions of 18 U.S.C. §2815(5), which provides in pertinent part:

> [E]very order and extension thereof shall contain a provision that authorization ... shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter [18 U.S.C. §2510, *et seq.*]

Essentially, the interception of each and every attorney-client call which is not a fraud crime exception, should and must be minimized. The applicable statutory provisions impose a number of strict requirements on the issuance and use of wiretaps. See *United States v. Giordano,* 416 U.S. 505, 515 (1974). Specifically, the statue provides in pertinent part that:

> Any aggrieved person in any trial ... may move to suppress the contents of any wire or oral communication intercepted ... on the grounds that ... (iii) the interception was not made in conformity with the order of authorization ... *Id.*, 18 U.S.C. §2518(10)(a). See also, *United States v. Lopez*, 300 F.3rd 46 (1st Cir 2002).

9

It has been established that not every failure to comply fully with any specific requirements provided by Title III necessitates suppression. *US v Escobar-de Jesus*, 187 F.3d 148, 171 (1st Cir 1999). However, the court must consider whether the underlying violation frustrated the protective purpose of the statute in any particular case. *United States v. Lopez* at 54. In this particular case, the extensive and blatant violations encompass that of not minimizing over twenty-five (25) attorney-client calls. This situation is so egregious as to warrant, *de minimis*, the suppression of all the wiretap evidence obtained against the Defendant. The government improper action was grossly negligent at best, and perhaps even knowing and intentional. Regardless of whatever may be the proper characterization of this conduct, these violations are inexcusable and should not be conduct by the government that should tolerated by this court.

The government's misconduct included the interception and transcription of Salomon Bendayan's telephones calls with his several attorneys, namely: Howard Brownstein, Esq. (1call); Daniel Rosales (6 calls); Juan Fernando Gomez, Esq. (6 calls); Wilma Silva, Esq. (15 calls), and Luis German, Esq. (3 calls). This blatant misconduct was achieved by knowingly and intentionally recording and transcribing "privileged" calls between the Defendant and his attorneys. The government clearly violated the pertinent wiretap statute and court order both in the letter and the spirit, and seized evidence beyond what was authorized -- thus violating the Defendant's Fourth Amendment rights.

The government's conduct of deliberately intruding into attorney-client relationship warrants significant sanctions. The monitors knew these calls were between the Defendant and his attorneys but regardless continued on and still did not minimize.

There was no taint team. See *United States v. Renzi*, 722 F. Supp. 2d 1100 (D. Arizona 2010). In *Renzi* the court held that the appropriate remedial action was to suppress the entire wiretap evidence. The government, as in this case, conducted an unreasonable wholesale interception of what was known to be attorney-client communications. In that case thirty-seven (37) calls were not minimized. Similarly, in this case thirty-one (31) calls were not minimized. The government's agents engaged in intentional conduct that was a clear violation of Title III and the Fourth Amendment. Accordingly, such unlawful conduct by the government warrants and supports the suppression of all of the wiretap evidence.

## SUMMARY

It is for all of the foregoing reasons, that the wiretap evidence, together with all evidence and any and all taint that flowed from this illegal government action, be hereby suppressed by the court.

BROWNSTEIN & ASSOCIATES, P.C.

By: /s/Howard B. Brownstein, Esquire
HOWARD B. BROWNSTEIN, ESQUIRE
Brownstein & Associates, P.C.
512 42nd Street
Union City, NJ 07087
T. (201) 866-4949
Email: hbb@bba-law.com

DATED: September 9, 2015

**CERTIFICATE OF SERVICE**

An electronic copy of the foregoing was filed on September 9, 2015 with the Clerk of the Court using CM/ECF system which will send notification of such filing to all attorneys of record.

> Respectfully submitted,
> BROWNSTEIN & ASSOCIATES
> Attorneys for Salomon Bendayan
>
> s/Howard B. Brownstein
> HOWARD B. BROWNSTEIN, ESQ.
> BROWNSTEIN & ASSOCIATES
> 512 42nd Street
> Union City, New Jersey 07087
> (201) 866-4949
> hbb@bba-law.com